## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BENJAMIN J. RICH, | |
| Plaintiff, | CIVIL ACTION NOS. 3:24-cv-02259; 3:24-cv-02263; 3:24-cv-02265; 3:24-cv-02266; 3:24-cv-02267; 3:24-cv-02268; 3:24-cv-02269 |
| v. | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, *et al.*, | (SAPORITO, J.) |
| Defendants. | |

## MEMORANDUM

Plaintiff Benjamin J. Rich has filed seven *pro se* complaints asserting a wide variety of claims arising from his incarceration at SCI-Coal Township. Some complaints have claims with no apparent connection to each other, some claims are pled in multiple complaints, and several complaints do not state a plausible claim for relief. Upon screening of these cases as required by 28 U.S.C. § 1915, and pursuant to Federal Rule of Civil Procedure 42, the Court will grant Rich leave to proceed *in forma pauperis*, permit Rich to proceed on two of his claims, close four cases, and grant leave to file amended complaints in the remaining three cases.

## I.    BACKGROUND

Collectively, the seven complaints raise the following allegations:

### A. Physical/Verbal Abuse

On September 4, 2023, during a medical examination in the Restricted Housing Unit ("RHU"), Lieutenant McLaughlin "inappropriately touched [Rich's] chest without consent," in the presence of Nurse James Strous and Officer Hartman, who "failed to intervene."

On September 20, 2023, Officer Parcel pepper-sprayed Rich "without justification" while Rich was "seeking medical assistance." Lieutenant Arias supervised and "attempted to justify the incident by forcing [Rich] to strip and wear a suicide gown."

On October 4, 2023, McLaughlin and Officer Wyda "excessively tightened" Rich's handcuffs, causing "marks, pain, and discomfort" to his wrists. On that same date, McLaughlin and Wyda escorted Rich to the shower. McLaughlin asked Rich if medical "took care of [Rich's] body," which Rich saw as an "inappropriate comment" about his medical condition. Wyda "mocked" Rich by making the following comments: "You're a liar. Medical told us you are lying about your chest and back pain." "You['re] a lying [b*tch]. Kill yourself." Wyda also "imitated" Rich's

symptoms "in a childish voice." McLaughlin and Wyda then stood outside the shower, "laughing and making demeaning comments" about Rich.

### B. Prison Conditions/Inadequate Medical Care

On September 4, 2023, McLaughlin "forced [Rich] to walk shirtless through the RHU and housed [him] in a psychiatric cell under camera surveillance for 10 days without explanation." On September 6, 2023, Rich "requested a shower and recreation time." Sergeant Johns denied this request, "falsely claim[ing Rich] had a clothing line in [his] cell" in violation of prison rules. Over a 17-day period, Rich was permitted to shower only once.

In July and August 2024, Rich experienced "severe respiratory issues, chest pain, and headaches," which he attributes to black mold at the prison. Black mold was present on Rich's mattress, cell ceiling, windows, vent, and in the showers. Attempts to "conceal the mold with paint and grout were ineffective." On July 13, 2024, "Nurse Brad" informed Rich that "black mold throughout the facility was likely causing his symptoms." Despite this, "no action was taken to address the mold or

[Rich's] medical needs." On the same day, Rich was prescribed "15 KOP[1] packs of pills with instructions to take 21 pills daily for conditions [Rich did] not have." Rich ingested some of these medications, which caused "internal bleeding and gastrointestinal pain." The records of these inappropriate prescriptions were later "deleted from the medical system."

On August 26, 2024, Rich reported "painful lumps on [his] lower back" to Nurse Davis. Despite "repeated complaints for over a year, medical staff failed to diagnose or treat" the condition or send Rich to a specialist.

## C. Prison Complaint Procedures/Denial of Access to Courts

On an unspecified date, Lieutenant Nietz "failed to properly process or forward" Rich's Prison Rape Elimination Act ("PREA") complaint about the incident in which McLaughlin touched Rich's chest. On September 21-22, 2023, Captain Scicchitano "refused to investigate abuse complaints," although Rich does not explain the substance of those complaints. Scicchitano also "withh[eld] an 'order to cease

---

[1] The abbreviation "KOP" generally means "keep on person," *i.e.*, that the inmate can possess his own medication rather than receiving it on an as-needed basis. *See, e.g.*, *Longo v. Trostle*, No. 3:22-CV-1199, 2024 WL 2214685, at *5 (M.D. Pa. May 16, 2024).

communication document', obstructing [Rich's] family court case."

On December 14, 2023, Rich "entrusted" his property to the staff of the Receiving and Discharge Department at SCI-Coal Township, while he was temporarily transferred to another prison. Upon his return on July 9, 2024, he found that "significant legal mail and documents were missing" and the remaining documents were "scattered and disorganized, making them unusable." This loss "obstructed [his] ability to litigate five [ ] ongoing pro se cases and meet court deadlines."

On September 3, 2024, "medical staff, including Ms. Santelli and Mr. McGinley . . . accessed and shared" Rich's confidential medical information with non-medical staff. This information was later "used against [Rich] in grievance responses."

## II. LEGAL STANDARDS

Under 28 U.S.C. § 1915, the Court is obligated to screen any civil complaint brought *in forma pauperis* and dismiss the complaint if it is "frivolous" or "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). The legal standard for dismissing a complaint for failure to state a claim under § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of

Case 3:24-cv-02268-JFS-SA    Document 6    Filed 01/22/25    Page 6 of 22

Civil Procedure. *Brodzki v. Tribune Co.*, 481 Fed. App'x 705, 706 (3d Cir. 2012) (per curiam). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Rich's complaints assert claims under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or

> the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation
> of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983. To establish a Section 1983 claim, a plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Further, "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown . . . to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As explained by the Third Circuit Court of Appeals:

> A defendant in a civil rights action must have personal
> involvement in the alleged wrongs . . . . [P]ersonal
> involvement can be shown through allegations of
> personal direction or of actual knowledge and
> acquiescence. Allegations of participation or actual
> knowledge and acquiescence, however, must be made

with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

## III.  ANALYSIS

### A. Physical/Verbal Abuse

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). In the context of an excessive force claim, the Court must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Banks v. Meck*, 531 F. App'x 205, 207 (3d Cir. 2013) (quoting (*Hudson*, 503 U.S. at 7)).

First, Rich claims that Officer Parcel pepper-sprayed him "without justification." Although the complaints are thin on detail, Rich's allegation that Parcel sprayed him while he was "seeking medical assistance" would support an inference that Parcel's use of force was inflicted to cause harm, not as a good-faith effort to maintain discipline. Accordingly, Rich will be permitted to proceed on an Eighth Amendment

claim against Parcel.[2] While Lieutenant Arias allegedly "attempted to justify" the pepper-spray incident after the fact, the complaints allege no excessive force by Arias, nor do they indicate that Arias "had a reasonable opportunity to intervene and [] refused to do so." *See Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002). Accordingly, no claim will proceed against Arias.

Rich alleges that in a separate incident, McLaughlin and Wyda "excessively tightened" his handcuffs. While pain or injury from tight handcuffs could support an Eighth Amendment claim, the complaints here do not support an inference that McLaughlin or Wyda tightened Rich's handcuffs for the purpose of causing pain.[3] There is no indication that Rich complained to the officers, or that the officers knew he was in pain. The allegations that he was injured and the handcuffs were tight,

---

[2] Although Rich did not provide an address for Parcel, and Parcel is not presently listed on the docket because he was not listed in the "Defendants" section of the complaint form, Rich clearly intended to name him as a defendant. *See* No. 3:24-cv-02266 (Doc. 1 at 8). Accordingly, the Clerk will be directed to update the docket in the relevant case, and Rich will be ordered to supplement the complaint with contact information sufficient to complete service of process on Parcel.

[3] Rich does not contend that the officers lacked a good-faith reason to use handcuffs on him.

without more, do not suggest a constitutional violation. *See, e.g., Fears v. Beard*, 532 F. App'x 78 (3d Cir. 2013); *Gilles v. Davis*, 427 F.3d 197, 207-08 (3d Cir. 2005) (granting summary judgment to defendants on an excessive force claim where the plaintiff "demonstrated no expression or signs of discomfort at the time he was handcuffed").

Next, Rich alleges that McLaughlin "inappropriately touched [Rich's] chest without consent" during a medical examination, and Hartman "failed to intervene." There is no suggestion of physical injury or excessive force, and Rich seems to allege that the touching was sexual in nature. *See* No. 3:24-cv-2263 (Doc. 1 at 5, discussing "sexual abuse"). The Court finds that Rich's description of a single touch to the chest, without more detail, does not support an inference of a constitutional violation. *See Ricks v. Shover*, 891 F.3d 468, 476 (3d Cir. 2018) ("[E]ven if sexualized touching lacks a penological purpose, it may still fall below the threshold of constitutional cognizability based on a lack of objective seriousness."); *see also Hudson*, 503 U.S. at 10 (not every "malevolent touch by a prison guard gives rise to a federal cause of action"). Rich also asserts Eighth Amendment claims based on the officers mocking and verbally abusing him, but "[v]erbal harassment of a prisoner, although

distasteful, does not violate the Eighth Amendment." *Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009).

### B. Prison Conditions/Inadequate Medical Care

Next, the Court considers Rich's claims relating to his conditions of confinement and medical care. The Eighth Amendment "prohibits any punishment which violates civilized standards and concepts of humanity and decency," including deprivations of "the minimal civilized measure of life's necessities." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)). The deprivation alleged must be "sufficiently serious," and (2) the "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The complaint must support an inference of deliberate indifference, meaning that the named defendant "actually knew of and disregarded constitutional violations." *Thomas*, 948 F.3d at 138 (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001)).

McLaughlin allegedly "forced [Rich] to walk shirtless through the RHU[4] and housed [him] in a psychiatric cell under camera surveillance

---

[4] The allegation that Rich was escorted "shirtless through the RHU," presumably in view of other inmates, does not itself support a
*(continued on next page)*

for 10 days without explanation." This bare allegation does not describe a deprivation of the "minimal civilized measure of life's necessities," nor would it affect a protected liberty interest to support a Fourteenth Amendment due process claim. *See Smith*, 293 F.3d at 653 ("[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest.").

Next, Rich alleges he was permitted to shower only once within a 17-day period, but this does not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (denial of showers for 28 days was not an Eighth Amendment violation). Rich complains of black mold in the prison, but he identifies no defendant with the requisite personal involvement who is subject to suit under Section 1983. Rich attempts to sue the Pennsylvania Department of Corrections, citing *Monell v. Department of Social*

---

constitutional claim. *See, e.g.*, *Eby v. Karnes*, No. 1:19-CV-2069, 2020 WL 1550634 (M.D. Pa. Apr. 1, 2020) (no constitutional violation where visual cavity search was performed in front of other inmates); *Illes v. Beard*, No. 1:12-cv-964, 2013 WL 2285565, at *5-6 (M.D. Pa. May 23, 2013) (no constitutional violation where inmates were required to shower in view of other inmates and staff).

*Services*, 436 U.S. 658 (1978), but the DOC is a state agency immune from suit on this basis under the Eleventh Amendment, and *Monell* applies only to municipal entities. *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 n.10 (3d Cir. 2020)).

Rich also alleges inadequate treatment of a series of medical issues. For an Eighth Amendment claim based on deliberate indifference to his serious medical needs, he must "make (1) a subjective showing that 'the defendants were deliberately indifferent to [his] medical needs' and (2) an objective showing that 'those needs were serious.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). A medical need is serious if it "has been diagnosed by a physician as requiring treatment or . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citation omitted).

Rich alleges that "no action was taken" to address his chest, respiratory, and head issues allegedly caused by mold in the prison. The only defendant he identifies as having any personal knowledge of these issues is Nurse Brad. Given Nurse Brad's alleged comment that Rich's

problems were "likely" caused by mold, the complaint supports a plausible inference that Nurse Brad was responsible for Rich's medical care, evaluated Rich, and violated the Eighth Amendment by taking "no action" despite knowing that Rich was suffering from these symptoms. Accordingly, Rich may proceed on an Eighth Amendment claim[5] against this defendant.

Aside from Nurse Brad, Rich fails to identify any defendant with personal involvement in the allegedly inadequate medical treatment. He alleges he suffered from "large, painful lumps on his lower back," and made "ongoing complaints for over a year." Even assuming this description raises an inference of a serious medical need, the only named individual alleged to have personal knowledge is Nurse Davis, to whom he reported the back issue once. Rich does not explain what responsibility Nurse Davis had for his medical care, how Nurse Davis responded to his

---

[5] Rich appears to assert state law medical negligence claims, but does not identify the intended defendants, nor has he filed a certificate of merit as required by Pennsylvania law. *See*, *e.g.*, *Robinson v. SCI Camp Hill Med. Dep't*, No. 1:15-CV-1610, 2015 WL 7074704, at *7-9 (M.D. Pa. Aug. 19, 2015) (recommending dismissal without prejudice at the screening stage for failure to file the required certificate of merit, citing Pa.R.C.P. No. 1042.3).

report, or why that response reflected deliberate indifference to a serious medical need, nor does he allege that Nurse Davis was aware of the "ongoing complaints." Accordingly, Rich will be permitted to proceed on an Eighth Amendment claim of inadequate medical care against Nurse Brad only.

### C. Prison Complaint Procedures/Denial of Access to Courts

Finally, the Court addresses Rich's various allegations about prison complaint procedures and denial of access to the courts. Rich alleges that Lieutenant Nietz "failed to properly process or forward" his PREA complaint about the incident in which McLaughlin touched his chest. However, PREA does not itself create a private right of action, so the allegation that a defendant did not follow PREA procedures does not itself state a claim. *See Simms v. Houser*, No. 3:21-CV-0321, 2021 WL 5507746, at *6 (M.D. Pa. Nov. 24, 2021) (collecting cases). Similarly, Rich alleges that Captain Scicchitano "refused to investigate abuse complaints" in violation of DOC policy, but a violation of agency policy does not itself create a legal claim.[6] It appears that Rich may have

---

[6] *See Woods v. Harry*, No. 4:21-CV-1052, 2023 WL 8480066, at *19 n. 69 (M.D. Pa. Dec. 7, 2023) (listing cases); *Atwell v. Lavan*, 557 F. Supp.
*(continued on next page)*

intended these allegations to support a First Amendment retaliation claim, but the complaints contain no other discussion of Nietz or Scicchitano, and thus do not support any plausible inference of retaliatory intent.

Finally, Rich alleges that various defendants denied him access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). To state a claim, a plaintiff must show (1) that he suffered an "actual injury," *i.e.*, that he lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that he has no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit. *Monroe v. Beard*, 536 F.3d 198, 205-06 (3d Cir. 2008) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). "The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Id.* at 205 (quoting *Christopher*, 536 U.S. at 416-17). "Prisoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or

---

2d 532, 556 n. 24 (M.D. Pa. Mar. 26, 2008) (same). Rich also accuses various defendants, without explanation, of generally failing to "process grievances"; however, because prisoners have no constitutional right to a prison grievance process, this allegation does not support a claim. *See*, *e.g.*, *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005).

collateral) to their sentences and conditions of confinement." *Id.*

Rich alleges that unnamed officers lost his legal property during his temporary transfer to another prison.[7] *See Bainbridge v. Pennsylvania Dep't of Corr.*, No. 23-CV-4835, 2024 WL 556657, at *5 (E.D. Pa. Feb. 12, 2024) ("To the extent that the [lost property] claim involves legal materials, it is properly construed as a First Amendment access-to-the-courts claim."). He alleges that the officers "lost critical materials" and "obstructed his ability to litigate" several cases. But he gives no indication that this directly caused him to lose a non-frivolous claim, that the cases involved his sentence or conditions of confinement, or that there was no other available remedy. Rich claims a violation of his Fourteenth Amendment due process rights, but he would have to allege that no process of "post-deprivation remedy" was available to him, which he does not allege here. *See Humphrey v. Sec'y Pennsylvania Dep't of Corr.*, 712 F. App'x 122, 125 (3d Cir. 2017). Regardless, Pennsylvania provides a

---

[7] Rich further alleges that Scicchitano withheld an "order to cease communication," which "obstructed [Rich's] ability to litigate" a family court case. This could not support an access to courts claim, because it would not involve a challenge to his sentence or the conditions of his confinement.

remedy in state tort law[8], the existence of which forecloses any "alleged due process claims with respect to the confiscation of [Rich's] legal materials." *Id.* (citing 42 Pa. Cons. Stat. Ann. § 8522(b)(3)).

Finally, Rich alleges that various officers improperly accessed or shared his private medical information. Inmates' right to private medical information is guaranteed by the Fourteenth Amendment. *See Doe v. Delie*, 257 F.3d 309, 316-17 (3d Cir. 2001). However, that right is "subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security." *Id.* at 317. Further, the right applies only "in the case of an unusual medical condition which, if disclosed unnecessarily, would likely expose the inmate to ridicule, discrimination, or even potential violence and harm, particularly when word of the condition is likely to spread through rumor or gossip." *Medina v. Little*, 2023 WL 8027154, at *12 (E.D. Pa. Nov. 20, 2023) (citing *Smith v. Hayman*, 2012 WL 1079634, at *18 (D.N.J. Mar. 30, 2012), aff'd, 489 Fed. Appx. 544 (3d

---

[8] The Court does not infer any such claim here, and would lack subject matter jurisdiction over that claim, since it would be only "tangentially related" to the surviving federal claims. *See In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 303 (3d Cir. 1998) (citing 28 U.S.C. § 1367).

Cir. 2012)); *see also Betrand v. Dep't of Corr.*, No. 4:07-CV-859, 2008 WL 744817, at *4 (M.D. Pa. Mar. 18, 2008) ("the constitutional right to non-disclosure appears to be limited to HIV, AIDS, mental health, matters of an embarrassing or humiliating nature, or matters in which the person had a legitimate expectation of confidentiality") (citation omitted).

Rich alleges that McLaughlin and Wyda violated his rights to medical privacy by commenting about his medical condition. But the complaint does not support a plausible inference that the medical condition was an "unusual" kind that would trigger the right to privacy. Further, there is no allegation that either defendant shared Rich's medical information with anyone. Rich seems to assert a constitutional right to prevent officers from talking to *him* about his own medical conditions in a non-medical setting. No such right exists. *See*, *e.g.*, *Daly v. Pennsylvania Dep't of Corr.*, No. 1:20-CV-00023-SPB, 2024 WL 4480103, at *19 (W.D. Pa. Aug. 7, 2024) ("A prison official's discussion of medical information in a public setting [] does not alone violate an inmate's right to confidentiality.").

Rich further alleges that "medical staff . . . improperly accessed and shared" his medical information with "non-medical staff" for use in

grievance responses. Responding to grievances is a legitimate correctional purpose, so Rich has no constitutional right to prevent staff from accessing medical information for that reason. To the extent there is any other basis for Rich's medical privacy claims, none is apparent from the complaints.

## IV. CONCLUSION

Rich's complaints state two plausible claims for relief: an Eighth Amendment excessive force claim against Officer Parcel, and an Eighth Amendment claim for deliberate indifference to a serious medical need against Nurse Brad. As pled, dismissal of the remaining claims (and complaints) would be warranted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). However, the Court will grant Rich an opportunity to cure these pleading defects by filing an amended complaint or complaints. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (instructing that, if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile).

Where multiple cases involve common questions of law or fact, the Court may consolidate the cases or issue other just orders to avoid

unnecessary cost or delay. *See* Fed. R. Civ. P. 42(a). Accordingly, the Court will consolidate these cases, and permit Rich to file any amended complaint(s), in the following manner:

(1)    Rich's claim against Officer Parcel will proceed in docket number **3:24-cv-02266**. Any further claims arising from physical abuse by officers must be raised in that case.

(2)    Rich's claim against Nurse Brad will proceed in docket number **3:24-cv-02269**. Any further claims arising from unconstitutional conditions of confinement or inadequate medical care must be raised in that case.

(3)    Any claims arising from prison complaint procedures, retaliation, denial of due process, disclosure of medical information, or denial or access to courts must be raised in docket number **3:24-cv-02259**.

(4)    If Rich elects not to file an amended complaint in any of these cases, that case will proceed on the surviving claims, or will be closed if no claim survives.

(5)    The complaints in docket numbers **3:24-cv-02263**, **3:24-cv-02265**, **3:24-cv-02267**, and **3:24-cv-02268** will be dismissed and the cases closed, because Rich may raise any non-futile claims in other cases. *See,*

e.g., *Fabics v. City of New Brunswick*, 629 F. App'x 196, 198-99 (3d Cir. 2015).

Appropriate orders will issue in each of the seven cases. Rich is warned that failure to comply with these instructions, including any effort to plead the same claims in multiple cases, may result in the corresponding amended complaint(s) being stricken.

Dated: January 22, 2025                    *s/Joseph F. Saporito, Jr.*
                                           JOSEPH F. SAPORITO, JR.
                                           United States District Judge